**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jimmy R. Wolfe, ) | No. CIV 08-293-TUC-FRZ (GEE) |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of the) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(g).

The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on March 12, 2010.  (Doc. 23).

The Magistrate Judge recommends that the District Court, after its independent review, remand this action for further proceedings.  The final decision of the Commissioner is not supported by substantial evidence.

//

//

PROCEDURAL HISTORY

On June 1, 2005, Wolfe filed an application for disability insurance benefits and supplemental security income. (Tr. 16). He alleged disability beginning on October 20, 2004, due to HIV status, joint pain, and memory loss. (Tr. 62). His claim was denied initially (Tr. 62-65) and upon reconsideration. (Tr. 55-59). Wolfe requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal on October 26, 2006. (Tr. 16-24). In his decision, dated February 15, 2007, the ALJ found Wolfe was not disabled from the alleged onset date, October 20, 2004, until the date of the decision. *Id*. Wolfe appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 3-5); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Wolfe subsequently filed this action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). He filed his opening brief on March 12, 2010. (Doc. 23). He argues the ALJ's decision improperly discounted (1) the opinions of the treating physicians and the State agency physicians, (2) the lay witness testimony, and (3) his own subjective testimony of disability. *Id*. The Commissioner filed an answering brief on July 13, 2010. (Doc. 32). Wolfe filed a reply on August 31, 2010. (Doc. 35).

Claimant's Work History and Medical History

At the time of the hearing, Wolfe was 41 years old and had completed 11 years of schooling. (Tr. 466-67).

Wolfe worked as a tractor trailer driver off and on for 15 years. (Tr. 194, 472). He stopped working in November of 2001 when he was "laid off for the season." (Tr. 193). After that, he worked briefly as a dump truck driver and a plumber's helper. (Tr. 470-71). He explained he was unable to continue as a plumber's helper because "my knees wouldn't keep up with the walking around and carrying materials." (Tr. 468).

The medical record contains a large number of entries dating to the beginning of 2002 when Wolfe filed a prior application for disability insurance benefits. That application was denied initially and on reconsideration. (Tr. 75-76, 87). Wolfe chose not to pursue that

1   application but instead filed the pending application alleging disability since October 20, 2004.

2   (Tr. 16).

3   In November of 2002, Wolfe was given a psychological evaluation by Robert E.

4   Hammer, Ph.D., at the behest of the disability determination services. (Tr. 383-88). Hammer's

5   diagnosis reads in pertinent part as follows:

6   Axis I:    296.32   Major Depressive Disorder, Recurrent, Moderate.
              294.9    Cognitive Disorder.
7                      History of Polysubstance Abuse (304.80).
    Axis II:   V72.89   Borderline Intellectual functioning.
8   Axis III:           Chronic Neck and Back Pain, Daily Vomiting, Bloody Stools
                        and Torn Cartilage in Right Knee.
9   Axis IV:            Psychosocial Stressors: Unemployed and Without Income.
    Axis V:             Global Assessment of Functioning:
10                      Current GAF = 45
                        Highest GAF past year = 45
11  *Id*.

12  In December of 2002, Claude H. Koons, M.D., reviewed the medical record and

13  completed a Physical Residual Functional Capacity Assessment of Wolfe's ability to perform

14  work related tasks. (Tr. 82, 336-43). Koons noted a primary diagnosis of "right shoulder . . .

15  degenerative changes" and a secondary diagnosis of low back pain and HIV. (Tr. 336-43).

16  Koons concluded Wolfe could lift 20 pounds occasionally and 10 pounds frequently. *Id*. He

17  could stand, walk, or sit about 6 hours in an 8-hour day. *Id*. He noted Wolfe should avoid

18  climbing ladders, ropes, and scaffolds and avoid repetitive overhead reaching. *Id*.

19  In December of 2002, David Beeman, Ph.D., reviewed the medical record and completed

20  a Psychiatric Review Technique form assessing Wolfe's psychological limitations. (Tr. 82,

21  361-74). Beeman assessed an Organic Mental Disorder (Cognitive Disorder NOS), Affective

22  Disorder (Depressive syndrome), and Substance Addiction Disorder. (Tr. 361-74). Beeman

23  found Wolfe to be moderately limited in "activities of daily living," "maintaining social

24  functioning," and "maintaining concentration, persistence or pace." *Id*. He found "one or two"

25  "episodes of decompensation, each of extended duration." *Id*.

26  Beeman also found Wolfe "moderately limited" in his ability to perform work-related

27  tasks in the areas of "understanding and memory," "sustaining concentration and persistence,"

28  "social interaction," and "adaptation." (Tr. 375-76).

In May of 2005, John D. Bayless, Ph.D., performed a neuropsychological assessment. (Tr. 284-86).  His impression was:

> (1) Cognitive disorder, most likely secondary to depression with clear evidence for impairments of effort. . . .
> (2) Depression, severe, with suicidal ideation.
> (3) Present findings, coupled with history and previous assessment suggest lifelong verbal learning difficulties, with particular impairments in spelling and arithmetic skills.

*Id.* He opined that "the combination of physical limitations from his orthopedic problems with verbal learning difficulties and psychiatric disorder may serve to severely limit his available vocational options."  *Id.*

Treatment notes from June of 2005 indicate that Wolfe was recently involved in a fight and received a number of facial fractures.  (Tr. 306).  He stated he was currently laid off and was looking for another job.  *Id.*  James Amos, M.D., offered the following comments:

> Alert and fully oriented.  Has limited vocabulary but is otherwise able to follow instructions and answer questions appropriately.  He has a longstanding pattern of problems with mood and relationship instabilities indicating that the underlying difficulty is a personality disorder.  His depressive symptoms may or may not respond to antidepressant[s] although the situational stressors that he's reacting to are unlikely to be removed in the near future.  Ongoing substance abuse is another pressure that is probably exacerbating his psychiatric difficulties. At the moment, however, he's not ready to change this facet of his life.

(Tr. 307).

In July of 2005, Philip R. Laughlin, Ph.D., reviewed the medical record and completed a Psychiatric Review Technique form assessing Wolfe's psychological limitations.  (Tr. 79, 246-62).  Laughlin assessed an Organic Mental Disorder (Cognitive Disorder), Affective Disorder (Adjustment Disorder), and Substance Addiction Disorder.  (Tr. 246-62).  Laughlin found Wolfe to be moderately limited in performing "activities of daily living," "difficulties in maintaining social functioning," and "difficulties in maintaining concentration, persistence or pace."  *Id.*  He found "one or two" "episodes of decompensation, each of extended duration."  *Id.*

Laughlin also found Wolfe "moderately limited" in his ability to perform work-related tasks in the areas of "understanding and memory," "sustaining concentration and persistence," "social interaction," and "adaptation."  (Tr. 260-61).

In July of 2005, Wolfe was examined by Robert J. Schultes, M.D., at the behest of the State disability determination service. (Tr. 272). Wolfe claimed he was unable to work because of depression; anger; decreased concentration; and pain in his neck, shoulders, knees, elbows, and wrists. *Id*. Wolfe reported he could lift and carry 20 pounds throughout an 8-hour day. *Id*. He could move about and sit for 8-hours per day, and he could walk about 8 blocks per day. *Id*.

Schultes found "some tenderness over the knee on the right" and "tenderness over the entire medial part of the right knee." *Id*. He found on examination that Wolfe had significantly decreased range of motion while elevating his right shoulder. (Tr. 274).

Schultes offered the following diagnoses:

1. Rotator cuff tendinitis.
2. Low back pain.
3. Wrist pain.
4. Lateral epicondylitis.[1]
5. Right knee sprain.
6. Depression.

(Tr. 273).

In August of 2005, Jan Hunter, D.O., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment of Wolfe's ability to perform work-related tasks. (Tr. 79, 264-71). Hunter noted a primary diagnosis of shoulder tendonitis and asymptomatic HIV and a secondary diagnosis of back pain, wrist pain, and epicondylitis. (Tr. 264-71). Hunter concluded Wolfe could lift 20 pounds occasionally and 10 pounds frequently. *Id*. He could stand, walk, or sit about 6 hours in an 8-hour day. *Id*. He noted Wolfe should avoid work above the shoulder level with the right arm due to tendonitis. *Id*.

In September of 2005, Wolfe's father, Roger Wolfe, completed a Third Party Function Report. (Tr. 142-49). He reported that Wolfe has pain and weakness in his shoulder and legs. (Tr. 147). He further reported that Wolfe's depression has caused him to limit his contact with other people. (Tr. 142, 149).

---

[1] Pain in the extensor tendons of the elbow. The Merck Manual of Diagnosis and Therapy, 505 (17th ed.1999).

1    In October of 2005, Robert Bob Hughes, M.D., re-examined the medical record for the

2 disability determination service. (Tr. 80). Hughes concluded that Hunter's "initial assessment

3 can be affirmed as written." (Tr. 412).

4    In October of 2005, Beverly Westra, Ph.D., re-examined the medical record for the

5 disability determination service. (Tr. 80). Westra concluded that Laughlin's "initial assessment

6 can be affirmed as written." (Tr. 410).

7    In September of 2006, Wolfe's wife, DeDee Wolfe, completed a Third Party Function

8 Report. (Tr. 203-11). She reported that Wolfe's bad knee affects his ability to climb, kneel,

9 walk, and stand. (Tr. 210). She further reported he has trouble understanding, remembering,

10 and following instructions; completing tasks; maintaining concentration; and getting along with

11 others. *Id.*

12    In October of 2006, Wolfe appeared with counsel at a hearing before ALJ Milan M.

13 Dostal. (Tr. 461-95). Wolfe explained he was taking Lexapro for depression and Atripla for

14 HIV. (Tr. 474). He was also taking a "stomach pill" and medication for an infection. (Tr. 474-

15 75). He reported joint pain in his knees, ankles, elbow, and shoulder. (Tr. 475). He explained

16 he could stand for no more than ten minutes before he has to take a break. (Tr. 476). At home,

17 he could perform simple cleaning and cooking. (Tr. 478). He complained his HIV makes him

18 tired and depressed. (Tr. 481).

19    At the hearing, the vocational expert, Stacey Schonbrun, was asked a hypothetical about

20 a person with the ability to perform medium work but who must avoid lifting his right arm

21 above the shoulder arm and who has moderate joint pain, depression, learning deficits, and

22 fatigue. (Tr. 487-92). Schonbrun testified that such a person could not perform Wolfe's

23 previous work as a truck driver or fast food worker but could work as a hand packager or night

24 cleaner. *Id.*

25

26

27    CLAIM EVALUATION

28

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1  economy in view of claimant's age, education, and work experience.   20 C.F.R. §§
2  404.1520(a)(4); 416.920(a)(4).

3      "The burden of proof is on the claimant as to steps one to four." *Tackett v. Apfel*, 180
4  F.3d 1094, 1098 (9th Cir. 1999).  "As to step five, the burden shifts to the Commissioner." *Id*.

5

6      <u>The ALJ's Findings</u>

7      At step one of the disability analysis, the ALJ found Wolfe "has not engaged in
8  substantial gainful activity at any time relevant to [the] decision." (Tr. 18).  At step two, he
9  found Wolfe has "the following severe combination of impairment[s]: HIV . . . infection;
10  shoulder tendonitis; pain in the back, wrist, and knee; history of special education; adjustment
11  disorder; and substance use disorder, in remission. . . ." *Id*.  At step three, the ALJ found
12  Wolfe's impairments did not meet or equal the criteria for any impairment found in the Listing
13  of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404.  (Tr. 19).

14      The ALJ then analyzed Wolfe's residual functional capacity (RFC).  (Tr. 19).  He found
15  Wolfe has the residual functional capacity to perform a limited range of medium work activity.
16  (Tr. 19).  He could "lift and carry 50 pounds occasionally and 25 pounds frequently" and "sit,
17  stand and/or walk for about six hours in 8-hour day." (Tr. 19).  "His ability to climb, balance,
18  stoop, kneel, crouch, and crawl is limited to an occasional basis." *Id*.  "He should avoid work
19  above the right shoulder level." *Id*.  "He has moderate pain in the head, neck, back, right
20  shoulder, elbow, wrist, knees, and ankles which is or can be adequately controlled with
21  medication without significant adverse side effects." *Id*.  "His anxiety and depression are
22  moderate in nature and result in decreased memory, learning, and ability to get along with others
23  but are or can be adequately controlled with medication without significant adverse side
24  effects." *Id*.  "[S]ymptoms from a hernia and HIV infection including fatigue are also moderate
25  in nature but are or can be adequately controlled with medicine without significant side
26  [e]ffects." *Id*.

27      At step four, the ALJ found Wolfe could not perform his past relevant work.  (Tr. 23).
28  At step five, the ALJ found, based on the testimony of the vocational expert, that Wolfe could

work as a hand packer or night cleaner.  (Tr. 24).  Accordingly, he concluded Wolfe was not
disabled.

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through
medically acceptable clinical or laboratory standards, an inability to engage in substantial
gainful activity due to a physical or mental impairment that can be expected to last for a
continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  "[A]
claimant will be found disabled only if the impairment is so severe that, considering age,
education, and work experience, that person cannot engage in any other kind of substantial
gainful work which exists in the national economy."  *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§ 405(g),
1383(c)(3).  The decision to deny benefits "should be upheld unless it contains legal error or is
not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion."  *Id.*  It is "more than a mere scintilla but less than a
preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's
decision should be upheld."  *Orn*, 495 F.3d at 630.  "However, a reviewing court must consider
the entire record as a whole and may not affirm simply by isolating a specific quantum of
supporting evidence."  *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a
treating physician is entitled to great weight.  *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
1993).  The Commissioner may reject a treating physician's uncontradicted opinion only if he
sets forth clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
1995).  If the treating physician's opinion is contradicted by another doctor, the Commissioner
may reject that opinion only if he provides specific and legitimate reasons supported by

1  substantial evidence in the record.  *Lester,* 81 F.3d at 830.  No distinction is drawn "between
2  a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
3  disability." *Rodriguez v. Bowen*, 876  F.2d 759, 761 n.7 (9th Cir. 1989).

4      "The opinion of an examining physician is, in turn, entitled to greater weight than the
5  opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
6  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
7  uncontradicted opinion of an examining physician." *Id.*  "[T]he opinion of an examining doctor,
8  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
9  that are supported by substantial evidence in the record." *Id.* at 830-31.

10      "Where medical reports are inconclusive, questions of credibility and resolution of
11  conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d
12  747, 751 (9th Cir. 1989) (punctuation omitted).  The Commissioner's finding that a claimant is
13  less than credible, however, must have some support in the record. *See Light v. Social Security*
14  *Administration,* 119 F.3d 789 (9th Cir. 1997).

15      The ALJ need not accept the claimant's subjective testimony of disability, but if he
16  decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,*  81
17  F.3d at 834.  "Unless there is affirmative evidence showing that the claimant is malingering, the
18  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
19  *Id.*  "General findings are insufficient; rather, the ALJ must identify what testimony is not
20  credible and what evidence undermines the claimant's complaints." *Id.*

21

22      DISCUSSION

23      The ALJ in this case found Wolfe retains the ability to perform at the exertional level
24  required for medium work. *See* 20 C.F.R. §§ 404.1567, 416.967.  This finding is not supported
25  by substantial evidence in the record.  Accordingly, this case must be remanded for further
26  proceedings by the Commissioner for Social Security.  The court expresses no opinion on
27  Wolfe's alternate grounds for relief.

28

1       The disability determination physicians, Koons, Hunter, and Hughes, reviewed the

2   medical record and concluded that Wolfe can lift 20 pounds occasionally and 10 pounds

3   frequently.  This exertional level is consistent with the demands of light work.  20 C.F.R. §§

4   404.1567, 416.967.

5       The ALJ, however, rejected the opinions of the disability determination physicians and

6   concluded that Wolfe could lift 50 pounds occasionally and 25 pounds frequently.  He therefore

7   found that Wolfe could meet the exertional demands of medium work.  *See* 20 C.F.R. §§

8   404.1567, 416.967. This was error.

9       The ALJ's finding that Wolfe retains the ability to perform the exertional demands of

10   medium work was based solely on his review of the medical record and his evaluation of how

11   those medical findings would affect Wolfe's functional abilities.  The ALJ, however, is not a

12   medical expert and may not offer his own expert evaluation of the raw medical data.  *Day v.*

13   *Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975);  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.

14   1999);  *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998);  *Ferguson v. Schweiker*, 765 F.2d

15   31, 37 (3rd Cir. 1985);  *Liskowitz v. Astrue*, 559 F.3d 736, 741(7th Cir. 2009).

16       The Commissioner argues that while the ALJ must consider the medical opinions in the

17   record he is not obliged to adopt them.  The Commissioner is correct.  The ALJ may reject the

18   medical opinions in the record if, for example, they are inconsistent with other substantial

19   evidence in the record. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Having rejected those opinions,

20   however, the ALJ is not at liberty to become his own medical expert and interpret the raw

21   medical data for himself.

22       The Commissioner further argues that Wolfe's own admission that he can "lift and carry

23   20 pounds for eight hours a day" is "consistent with an ability to perform medium work."

24   (Response, p. 19).  He maintains the ALJ's RFC may be inferred in part from the claimant's

25   own concessions. The Commissioner is incorrect.  In order to perform medium work, one must

26   be able to lift *50* pounds occasionally and *25* pounds frequently.  *See* 20 C.F.R. §§ 404.1567,

27   416.967.  Wolfe's admissions are not consistent with the ALJ's finding that he can perform the

28   exertional requirements of medium work.

1    Finally, the Commissioner argues that even if Wolfe only had the ability to perform light

2  or sedentary work, there are still jobs in the economy that he could perform and he is not

3  disabled.  While that might be true, the ALJ did not advance this argument in his decision.  The

4  court, therefore, cannot consider it.  *Connett v. Barnhart*,  340 F.3d 871, 874 (9th Cir. 2003);

5  *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

6

7    <u>RECOMMENDATION</u>

8    For the foregoing reasons, the Magistrate Judge recommends that the District Court, after

9  its independent review, enter an order granting the plaintiff's motion for summary judgment in

10  part and remanding the plaintiff's claim for further proceedings.  (Doc. 23).

11    Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within

12  14 days after being served with a copy of this Report and Recommendation.  If objections are

13  not timely filed, the party's right to de novo review may be waived.  *See United States v. Reyna-*

14  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

15    The Clerk of the Court is directed to send a copy of this Report and Recommendation

16  to all parties.

17    DATED this 1st day of October, 2010.

18

19

20    _____

21    Glenda E. Edmonds
     United States Magistrate Judge

22

23

24

25

26

27

28